In the Matter of HAROLD A. GORDON and JOSEPH A. FIELD, Peti-
tioners, for a Certiorari Order against THE BOARD OF APPEALS
OF THE CITY OF SCHENECTADY, Respondent.

Supreme Court, Schenectady County, December 28, 1927.

**Municipal corporation — zoning ordinance — zoning ordinance of city
of Schenectady requires side yard in multiple dwelling district of one
and one-half inches for each foot of building height — permit to erect
building in question was granted September 8, 1927, and erection com-
menced immediately — building is on corner lot — petitioners' building
adjoins — petitioners did not appeal from action of building inspector
within thirty days after permit granted — side yard not required on
both sides of building — certiorari denied.**

The petitioner seeks to review by certiorari the action of the board of appeals
of the city of Schenectady in affirming the action of the building inspector in
granting a permit for the erection of an apartment house next to the petitioners'
premises.    The petitioners claim that the location of the structure on the line
violates the zoning ordinance of the city which is to the effect that a building

erected within the multiple dwelling district must have " a side yard at least one and one-half (1½) inches in width for each foot of building height." The building in question is being erected on the boundary line of the petitioners' property but it has a side yard on the opposite side which complies with the zoning ordinance and in every other respect the building complies with the ordinance. The owner of the building asked for and obtained a permit to erect the building according to plans filed and the erection thereof began immediately after the permit was granted on September 8, 1927. The petitioners did not protest to the owner or to the municipal authorities for more than two months when an appeal was taken to the board of appeals and in the meantime more than $20,000 had been expended on the building.

If a reasonable construction of the ordinance does not sustain the building inspector the fact that the owner of the building has expended a large amount of money in the course of construction will not protect her from her wrongful act in violating the zoning ordinance.

A reading of all the provisions of the zoning ordinance of the city of Schenectady leads to the conclusion that the provisions applicable to the location in this case should be construed to mean that a side yard is required only on one side of the building and, therefore, the construction by the building inspector when he authorized the erection of the building on the boundary line is in accordance with the proper construction of the zoning ordinance, and certiorari to review the action of the zoning board of appeals is denied.

Furthermore, the petitioners, by their delay, are guilty of laches and are not entitled to a different interpretation in view of the fact that the determination of the building inspector was not unreasonable and the parties acted in good faith.

CERTIORARI to review the action of the zoning board of appeals of the city of Schenectady.

*Fryer & Lewis* [*Charles G. Fryer* of counsel], for the petitioners.

*Borst & Smith* [*George E. Smith* of counsel], for Jennie C. Jackson.

*Mathias C. Poersch, Corporation Counsel,* for the Board of Appeals, respondent.

GOLDSMITH, J. Certiorari to review the action of the zoning board of appeals of the city of Schenectady in affirming the action of the building inspector of the city permitting Jennie C. Jackson to erect an apartment house next to the boundary line of petitioners' premises.

The petitioners contend that the location of this structure upon Mrs. Jackson's property violates the zoning ordinance of the city, which provides, in respect to the " multiple dwelling district " as follows:

" Side Yard: There shall be a side yard at least one and one-half (1½) inches in width for each foot of building height."

The premises involved in this proceeding were part of a larger parcel and were sold at public sale on February 18, 1927, pursuant to a judgment in partition. Mrs. Jackson and another, who subsequently deeded his interest to her, acquired the vacant lot situated

on the southeast corner of Union street and Park avenue and the petitioners purchased the next adjoining premises to the east on Union street. Upon the latter property was a large, substantial, single family frame dwelling house standing fifty feet back from Union street and three feet easterly of the boundary line between the two properties. On the westerly side of the dwelling house there were two bay windows, one story high and one foot eighteen inches wide, encroaching upon the three-foot areaway.

All of the property was restricted to a building line on Union street fifty feet back from the street and a similar line on Park avenue twenty feet back from the street. The premises were free from all other restrictions except the requirements of the building code of the city.

Soon after the purchase the petitioners remodelled the interior of their property, converting it from a single family house into three living apartments. Mrs. Jackson's lot was then vacant and windows from the west side of petitioners' house overlooked it.

On June 23, 1927, the city of Schenectady for the first time adopted a zoning ordinance. Previously construction and building were regulated solely by the building code. By the zoning ordinance the city was divided into seven districts. The premises under consideration are located in district " C " designated " Multiple Dwelling District." A multiple dwelling is defined as " a building or portion thereof used or designed as a residence for three or more families or households living independently of one another." Included in the provisions designed to carry into effect the purposes of the ordinance are specific regulations as to " height and area " for each district. The building inspector of the city is charged with the enforcement of the ordinance.

On September 8, 1927, Mrs. Jackson, as required by law, filed with the building inspector plans and specifications for a three-story brick apartment house to be constructed upon her property. The proposed plans detailed a three-story brick apartment house with the easterly wall directly on the easterly lot line. The front wall was shown fifty feet back from Union street and the westerly wall twenty feet in from Park avenue, in accordance with the restrictions heretofore existing. To the rear there was provision for a yard nine feet wide. All of these areas for light and air were ample within the terms of the zoning ordinance, the only question arising being the location of the easterly wall on the easterly lot line. If a " side yard " on the easterly side of the building were required, it would result in setting the building in from the easterly lot line about fifty-one inches. The result would be a larger open space between this structure and petitioners' building. There was

some discussion between Mrs. Jackson and the building inspector concerning the meaning of the provision heretofore quoted in respect to the " side yard " and the building inspector determined that in the " multiple dwelling district " one " side yard " only was required. A building permit was thereupon granted in accordance with the plans and specifications filed.

Immediately thereafter Mrs. Jackson commenced building operations. It is conceded that she acted in good faith. Excavation was started on September thirteenth. The petitioner Gordon, a practicing attorney, resided upon his property adjoining and passed by these premises almost daily. He never made any protest to the owner or to the municipal authorities. He explained later that he was silent because he had been told that Mrs. Jackson was within her rights in building on the easterly line of her lot. About the middle of November the building had risen nearly to the top of the first story. About that time a local newspaper carried a story that the zoning ordinance required a yard to be reserved on each side of a building constructed in the " multiple dwelling zone " and that Mrs. Jackson's building was being erected in violation of the ordinance. Within a few days thereafter the petitioners took an appeal from the decision of the building inspector in issuing the building permit. The notice of appeal was served on the building inspector on November twenty-third. It is a fair estimate that $20,000 had been expended upon construction work at this time. On November twenty-ninth there was a hearing before the board of appeals, the body empowered to first pass upon the action of the building inspector, and his determination was affirmed. The action and decision of the board of appeals are now before this court for review upon application of the petitioners.

The enforcement of the ordinance rests with the building inspector. It is his duty to compel compliance with its provisions. He has no power to vary its terms. He must render his decision in accordance with the expressed direction of the ordinance. No discretion is vested in him. If his ruling is at variance with the ordinance or is an unreasonable interpretation of its terms, there is provision for speedy relief from the board of appeals. The rules of the board contemplate that an appeal should be taken within thirty days, although the time may be extended by the chairman or two members of the board. (Rule 5.) The board meets the first Monday in each month (rule 1) and special meetings may be called by the chairman, or two members in cases of emergency. (Rules 3, 6.) The board is immediately available to pass upon the action of the building inspector in order to insure proper enforcement of the ordinance and to prevent damage or irreparable injury being sus-

tained by any person or by the community. Mrs. Jackson filed her plans and specifications with the building inspector and the building permit was issued and received in good faith on September eighth. Construction was commenced on September thirteenth and the work pushed vigorously, yet no appeal was taken from the action of the building inspector until nearly two and one-half months had elapsed and the time within which an appeal might be taken had long since expired and the appeal could only be brought on by special permission. Meantime the work was being prosecuted within three feet of the building where petitioner Gordon, himself ·an attorney, was residing and within full view of other residents of the community and the public. After approximately $20,000 had been invested in the building and it had reached a full story above ground, the appeal was filed. A reversal of the determination of the building inspector at such time would necessarily impose heavy loss upon Mrs. Jackson.

Of course, these facts cannot aid Mrs. Jackson if the building inspector deliberately evaded the plain expression of the ordinance or if his decision was based upon a strained or unreasonable interpretation of the ordinance. The fact that Mrs. Jackson has succeeded without being restrained in erecting a structure upon her property in plain violation of a zoning ordinance would not give her protection for her unlawful act, if it were such. Under those circumstances she would be forced to suffer the damage. It is too well established to require more than passing comment that zoning ordinances constitute an essential feature of intelligent, progressive and adequate civic development and must be encouraged and upheld for the health, comfort, safety and general welfare of the community.

Mrs. Jackson claims that the building inspector has not only followed the clear and unequivocal language of the ordinance but has given to it a fair and reasonable interpretation. If this is so the board of appeals was justified in affirming the action of the building inspector. Even if the interpretation of the ordinance were fairly debatable and reasonable men might differ upon its construction, then the action of the building inspector must be upheld. Had the petitioners desired a different interpretation of the ordinance, they should have taken a timely appeal and not suffered Mrs. Jackson to sustain irreparable injury. It is not to be denied that the petitioners' property is deprived of an appreciable amount of light and air and is injured in appearance.

The zoning ordinance had been in force and effect in the city of Schenectady less than three months when Mrs. Jackson secured her building permit. Section **13** of the ordinance, in reference to

zone " C " or " multiple dwelling district " provides for " rear yard," " side yard " and " front yard " besides " outer court," " inner court " and " open space." These provisions are undoubtedly intended primarily to secure light and air for the structure to be erected. This view is fortified by a general provision of the ordinance that no open space upon any adjacent premises may be considered in estimating the requisite open space. There must be rear, side and front yards of not less than specified areas. If there are inner or outer courts, the minimum areas are specified. But there must be an open space of not less than forty per cent of the area of an inner lot or thirty per cent of an outer lot. There is no dispute that more than thirty per cent of the lot is open space. The question is whether it is distributed in accordance with the ordinance. Does the ordinance require yards on four sides or three sides of the building? There is no doubt about the front and rear yards. The statute provides in plain language for " a side yard." Is there anything convincing that two side yards must be provided? If not, in this case where the work has progressed so far, the decision of the building inspector must stand. Refer for enlightenment to other sections of the ordinance. Section 11 in reference to " zone 'A' single family residence district " and " zone ' B ' two family residence district " provides for:

" Side Yard: There shall be a side yard *on each side* of a building of not less than five (5) feet in width. All buildings and accessory buildings on corner lots shall conform to the set back requirements on the side street." (Italics mine.)

A side yard is required *on each side*. In addition provision is made for a front and rear yard. There must be yards on four sides, even though the lot is on the corner. Not only are these yards prescribed for light and air, but it is plain that it was the intention of the city planning board, which prepared and drafted the Schenectady ordinance, to preserve and enhance the attractiveness of the " single family and two-family residence districts " by providing for open spaces upon all sides of each building. These districts are highly restricted beyond residential purposes to churches educational institutions, libraries and hospitals. The same purpose is not apparent from the provisions regulating the " multiple dwelling district." The character of this district is not the same. Boarding and lodging houses, hotels, clubs, lodges, public garages for storage, and advertising signs are permitted. If the building inspector took these provisions into consideration he might very well conclude that æsthetic considerations were relaxed in respect to zone " C," and that yards on more than three sides of a building were neither necessary nor desirable in a location

open for certain commercial purposes. In fact, he would gain further assurance that the provision under consideration should be literally interpreted if he referred to section 14, regulations for " community store district," including dwelling purposes, where " side yard: not required," or to section 13, regulations for " commercial district," including dwelling purposes, where open spaces only as provided for zone " C," but *no yards*, are required. It is clear that the æsthetic considerations diminish as the purposes of the districts are enlarged. I cannot see that the interpretation given to the statute by the building inspector is not reasonable, and possibly even the correct one considering that the zoning ordinance effects an abridgement of the lawful use of Mrs. Jackson's premises through the force of the police power of the State.

Another question remains for determination. This structure has two entrances, one for the owner on Union street and the general entrance for apartments on Park avenue. The argument has been advanced that, the main entrance being on Park avenue, this side is the front of the building and the rear is on the easterly line and in violation of the ordinance because no rear yard was reserved. The place of entrance is not controlling. The surrounding circumstances decide this question. It is well known that Union street is only second in importance to State street, the leading thoroughfare of Schenectady. Park avenue is a comparatively short side or cross street. The map filed shows the frontage of Mrs. Jackson's premises on Union street. The plans filed and followed in construction show the " service section " or rear at the " south " end of the lot on Park avenue. In reference to corner lots the ordinance describes a cross street as a " side street " and contemplates the frontage to be on the main thoroughfare. (§ 11.) It follows that the front of these premises is on Union street.

It appears in the papers before me that the planning commission intended the restriction, applicable to zones "A" and " B " in respect to side yards, to apply to zone " C " but, through error, the additional words " *on each side* " were omitted from the ordinance and that an amendment incorporating these words is now before the city council for adoption. This does not alter my conclusions. The building inspector followed the precise language of the statute and, for the reasons I have given, his interpretation was logical and reasonable.

The petitioners by their delay are guilty of laches and are not entitled to a different interpretation of the statute where it appears that the determination of the building inspector was not unreasonable and the parties acted in good faith.

The petition should be denied. Settle order on notice.