■ In the Matter of ROSBAR COMPANY, Appellant, v BOARD OF APPEALS OF THE CITY OF LONG BEACH, Respondent.—In a proceeding pursuant to CPLR article 78 to review a determination of the respondent dated November 3, 1977, upholding the denial of a permit to the petitioner to repair fire damage to its building, the petitioner appeals from a judgment of the Supreme Court, Nassau County, entered April 20, 1978, which dismissed the petition. Judgment reversed, on the law, without costs or disbursements, determination annulled and matter remitted to respondent for a new hearing, to be held forthwith in accordance herewith. The petitioner is a partnership which owns a building on the boardwalk in the City of Long Beach called "The Breakers Hotel". The building was originally constructed as an "apartment hotel" in which each room, or suite of rooms was furnished with a kitchen. The bathroom was located in the hall on each floor. Thereafter, a zoning ordinance was enacted and the Breakers became a nonconforming use. In 1967 the petitioner removed the kitchens, added a bathroom to each room, and demolished several apartments on the first floor

where a central kitchen and dining room were added. By this time the clientele of the hotel consisted of senior citizens. In 1969 the petitioner obtained a State license to operate the Breakers as a private proprietary home for adults (PPHA). There was no change in the clientele of the Breakers. Throughout this time the Building Commissioner of the City of Long Beach had continually issued amended certificates of occupancy for the building and the City of Long Beach had continually issued licenses to operate the premises as an apartment hotel, as a hotel and then as a home for adults. In March, 1977 the building was damaged by fire and petitioner applied to the building commissioner for a permit to make repairs. The permit was denied upon the ground, *inter alia,* that the legal nonconforming use was lost when the use of the building changed. The other grounds relied upon by the building commissioner have either been resolved in favor of the petitioner or have been abandoned by the respondent board of appeals. The board agreed with the building commissioner that there had been a change of use and it also held that the fire damage was so extensive that petitoner was actually seeking to renovate the building and that therefore full compliance with the off-street parking requirements of the zoning ordinance was required. In our opinion the finding of the board that the repairs sought by petitioner were so extensive as to amount to a renovation of the premises is not supported by substantial evidence and therefore its determination on this issue must be annulled. The main issue presented is whether the alteration of the building from an apartment hotel to a so-called "American Plan" hotel to a PPHA constituted a change of the nonconforming use. The testimony at the hearing before the board was primarily concerned with other issues and the evidence pertaining to this question was insufficient to support a factual finding with respect thereto. Accordingly, the matter must be remitted to the board for a new hearing solely on the issue of change of use. At the hearing an in-depth inquiry should be made as to the nature of petitioner's business when it was conducted as an apartment hotel, "American Plan" hotel and a PPHA, with a view to establishing whether the alterations to the building resulted in the addition or elimination of bed space, a lessening or heightening of a demand for municipal services, greater or lesser use of the surrounding streets for automobile parking by the guests of the hotel, an increase or decrease in traffic to and from the building, etc. More than a mere change in name or a slight variation in clientele must be shown (see *Shegda v Village of Lancaster,* 192 Misc 560, affd 274 App Div 1087). In view of the protracted delay in this proceeding the new hearing should be held forthwith. Damiani, J. P., Titone and Rabin, JJ., concur.

Suozzi, J., concurs in the reversal of the judgment and the annulment of the determination but otherwise dissents and votes to grant the petition, with the following memorandum: I disagree with the majority's determination to remit this matter to the board of appeals for a new hearing on the issue of change of a prior nonconforming use. There were only two changes made in the subject premises, one in 1967 when it was changed from an apartment hotel to a hotel, and in 1969 when it was changed from a hotel to a private-proprietary home for adults (PPHA). In my view, the latter change was not a substantial change in a nonconforming use since it is conceded that no structural change occurred in the building at that time and that permission to operate the premises as a PPHA was obtained solely to allow the senior citizen residents who resided there to obtain supplemental security income. With respect to the change from apartment hotel to hotel in 1967, it is my view that Special Term correctly held that there was a

substantial change in the prior nonconforming use. Accordingly, no additional evidence that would be developed at the hearing on remand would be of any significant assistance in determining this precise issue. Notwithstanding the fact that there was a change in the prior nonconforming use in 1967 there remains a more fundamental and significant issue to be resolved, to wit, whether, under the particular facts of this case the City of Long Beach should be estopped from asserting that there was a substantial change in a prior nonconforming use in 1967 and from demanding that the new use meet all appropriate provisions of the zoning ordinance of the City of Long Beach. I am mindful of the general rule that with respect to the enforcement of zoning ordinances estoppel does not apply (4 Rathkopf, Law of Zoning and Planning [4th ed], p 67-2). Accordingly, "even though a building permit,or even (after completion) a certificate of occupancy, may have been issued, either or both indicating the validity of the structure or use, this does not serve * * * to create an estoppel which would prevent the municipality from revoking the permit (and any such certificate of occupancy) at any time on the ground of invalidity of the structure of the use or from otherwise enforcing the ordinance" (4 Rathkopf, Law of Zoning and Planning [4th ed], pp 67-2, 67-3; *City of Yonkers v Rentways, Inc.,* 304 NY 499). However, there are situations of " 'honest error' " (4 Rathkopf, Law of Zoning and Planning [4th ed], p 67-8) where the decision of the administrative official was a reasonable, albeit, erroneous one. In such cases, an estoppel may be raised against the municipality. The key is whether the permit was absolutely void or merely the result of an irregularity on the part of the administrative official who, although acting within the scope of the power delegated to him, made a debatable but reasonable interpretation of the ordinance. This distinction has been "set forth in a New York case" (3 Rathkopf, Law of Zoning and Planning, p 56-11; *Matter of Gordon v Board of Appeals of City of Schenectady,* 131 Misc 346) and has been followed in other jurisdictions (*Jantausch v Borough of Verona,* 41 NJ Super 89, affd 24 NJ 326; *Weber v Pieretti,* 72 NJ Super 184, affd 77 NJ Super 423; *Town of Highland Park v Marshall,* 235 SW2d 658). In *Jantausch v Borough of Verona (supra,* pp 94-95) the court stated: "But what of the intermediate situation in which the administrative official in good faith and within the ambit of his duty makes an erroneous and debatable interpretation of the ordinance and the property owner in like good faith relies thereon * * * There should be some point at which the owner of property who acts in such circumstances becomes secure." Similarly, in *Weber v Pieretti (supra,* p 201) the court stated: "An estoppel may be invoked * * * where the building inspector in good faith and within the ambit of his authority makes an erroneous and debatable interpretation of the ordinance and the property owner in good faith relies thereon." There is no dispute in this record as to the exact nature of the change in use, the substantial reliance of the owner, and the attitude of the building commissioner to the change in use. In 1967 the building was converted from an apartment hotel, its original use prior to the enactment of the zoning ordinance wherein apartment hotels were not listed uses (thus according it the status of a prior nonconforming use), to a hotel which was then a permitted use under the zoning ordinance. In effectuating that conversion, kitchens were taken out of the individual apartments and one dining room and kitchen were built on the ground floor. Thirteen apartments were destroyed to make room for these new facilities. Bathrooms were added to the apartments and at the hearing before the board of appeals, petitioner submitted a permit which had been secured for seven of the bathrooms. The work, which cost approximately $500,000, was

done to accommodate the clientele of the premises which had changed so as to consist primarily of senior citizens. Despite the physical alteration of the building and the fact that the building, although permitted as a hotel, violated side and rear yard setback requirements, off-street parking and height requirements of the zoning ordinance, the building commissioner continued to issue certificates of occupancy, certificates of compliance and mercantile licenses for the subject premises (one of which listed the use of the premises as an "Apartment-Hotel"). The issuance of these certificates and licenses continued subsequent to 1971, when the property was placed in an HH zone where hotels were not permitted. The totality of this proof indicates that the building commissioner did not consider the change from the prior legal nonconforming use of an apartment hotel to a hotel to be so substantial as to constitute an abandonment of the former. Also, it should be noted that he did not even rely on the 1967 change in his letter to the zoning board of appeals explaining his reasons for the denial of the building permit, but instead relied on the completely innocuous change in 1969 from a hotel to a PPHA. It was only by supplemental letter dated August 3, 1977 that the 1967 change was mentioned as a ground for refusing the permit. Having established that the building commissioner clearly did not consider the 1967 change to be a substantial change in a valid prior nonconforming use, the remaining question to be resolved is whether such a determination, while debatable, and perhaps erroneous, was nevertheless reasonable. I believe that question must be answered in the affirmative. In *Shegda v Village of Lancaster* (192 Misc 560, 562) the property was located in a district where the zoning ordinance permitted "hotels, rooming or boarding houses". The question was whether a convalescent home was so substantially different from a hotel that it would not be a permitted use. The court held that it was not substantially different and stated (pp 562-563): " *'Rooming and Boarding Houses*—A Building wherein more than five people are sheltered or fed for hire.' The defendant argues: 'It is not hard to understand that the constant going and coming of patients at the said homes, the extra parking hazards, the extra public services and private services required for the operation of such an establishment and the very transitory nature of the business is such that the same is undesirable in a residential neighborhood.' In my judgment, what the defendant emphasizes could occur in connection with a hotel or any boarding house. Yet the ordinance permits the erection and construction of hotels and boarding houses and use of buildings as such. Nor is the use of this building as a convalescent home more of a transitory nature than a hotel or any boarding house. It is quite frequent for doctors to recommend to people who are recovering from serious illnesses or operations that they leave the hospital for further convalescence before resuming the duties of their usual occupations. Primarily, they go to these homes to rest and recuperate. They differ in a very small degree from ordinary boarders. The fact that a nurse is on the premises to render any necessary service is not sufficient to take the proposed convalescent home of the plaintiffs out of the category of a boarding house. An ordinary boarder could become so ill that he or she might need a nurse in attendance for some period of time." (See, too, *Rice v Zoning Bd. of Appeals of Milford,* 122 Conn 435, where the change was from a dormitory to an apartment house, with minor alterations. The court held that there had been no substantial change in use.) Under the circumstances present at bar, it was, at the very least, reasonable for the building commissioner to determine that the mere change in clientele of the subject premises, along with the addition of bathrooms and removal of kitchens

from the various apartments, without any simultaneous demonstration or outcry by the city at any time during all of these years that extra services would be needed or that existing facilities would be taxed, did not constitute a substantial change in the valid nonconforming use. Therefore, after so significant a period of time, and the good faith reliance of the property owner, the city should be estopped from challenging the legality of the present use (see *Town of Highland Park v Marshall, supra*). I also disagree with the majority's conclusion that the board of appeals upheld the denial of the building permit on the further ground that the fire damage was so extensive that petitioner was actually seeking to renovate the building and could not comply with the applicable off-street parking requirements of the zoning ordinance. My examination of the board's resolution dated November 3, 1977, denying petitioner's appeal from the building commissioner's denial of a building permit, the findings of fact of the board attached thereto, as well as the minutes of the board's meeting on October 12, 1977, all conclusively indicate that the building permit was not denied on that ground but solely on the ground of a change in a prior valid nonconforming use. Finally, in the building commissioner's letter to the board dated July 27, 1977 he stated, "For these zoning reasons and for other non-zoning reasons not stated herein, the permit application was denied". If in fact other nonzoning reasons existed for the denial of the permit, they should have been expressly set forth by the building commissioner and not left to idle speculation. Accordingly, I vote to annul the respondent's determination and grant the petition.